IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ICON HEALTH & FITNESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> POLAR ELECTRO OY et al., <br><br> Defendants. | MEMORANDUM OPINION & ORDER REGARDING POLAR ELECTRO OY AND POLAR ELECTRO INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS <br><br> Case No.: 1:11-cv-00167-BSJ <br><br> Honorable Bruce S. Jenkins |

Pending before the Court is Defendants', Polar Electro Oy and Polar Electro Inc. (collectively, "Polar"), Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 147) ("Motion"). Polar contends that certain claims of U.S. Patent No. 6,701,271 ("'271 patent") are directed to patent-incligible subject matter and are, therefore, invalid under 35 U.S.C. § 101 ("Section 101"). For the reasons discussed below, the Court grants Polar's Motion.

I. **Procedural Background**

On November 18, 2011, ICON Health & Fitness, Inc. ("Icon") filed a Complaint against Polar Electro Oy ("Polar Oy") asserting infringement of U.S. Patent No. 7,789,800 ("'800 patent") and the '271 patent. (Dkt. No. 1). On June 8, 2012, Icon filed an amended complaint adding Polar Electro, Inc. ("Polar Inc.") and asserting infringement of an additional patent, U.S. Patent No. 6,921,351 ("'351 patent). (Dkt. No. 9). The case was stayed with respect to the '800 patent and the '271 patent pending finalization of reexamination proceedings for those patents. (Dkt. No. 51). The Court entered a scheduling order for the case concerning the '271 patent after finalization of the '271 patent reexamination. (Dkt. No. 141).

After entry of the scheduling order, Polar filed its Motion, requesting that the Court find that claims 15, 42, 49, 51, 54, 80, 81, 82, 90, and 91 of the '271 patent are directed to patent-

ineligible subject matter and thus invalid under 35 U.S.C. § 101. (Dkt. No. 147). Icon filed an opposition ("Opposition") (Dkt. No. 166) together with two declarations: (1) a Declaration of Tyson K. Hottinger (Dkt. No. 167), along with three letters related to alleged discovery disputes between the parties; and (2) a Declaration of Dr. David Brienza. (Dkt. No. 168). With its Opposition, Icon also filed a Request that the Court take judicial notice of two groups of documents. The first group consists of the prosecution history of two patents that are unrelated to the asserted '271 patent: (1) the prosecution history file wrapper of U.S. Patent Application No. 11/545,018, which issued as U.S. Patent No. 8,512,238; and (2) the prosecution history file wrapper of U.S. Patent Application No. 13/418,781, which issued as U.S. Patent No. 9,149,213. The second group of documents includes portions of the two separate reexaminations of the '271 patent: (1) the *ex parte* reexamination of U.S. Patent No. 6,701,271 that was assigned Control No. 90/013,409; and (2) the *inter partes* reexamination of U.S. Patent No. 6,701,271 that was assigned Control No. 95/002,337. (Dkt. No. 169). Polar filed a reply brief in support of its Motion (Dkt. No. 171) and shortly thereafter a Notice of Errata. (Dkt. No. 174).

On January 19, 2017, the Court held a hearing during which Icon presented arguments based on new cases it had not previously cited. The Court allowed Polar to file a short response to Icon's arguments related to the new cases, which Polar filed shortly after the hearing. (Dkt. No. 178). In response, Icon filed a Supplemental Opposition Brief. (Dkt. No. 180). Neither party sought construction of any claim terms in its briefing on the Motion.

## II. The '271 Patent

### A. Technological Background

Based on a review of the '271 patent and the parties' briefing, the Court arrives at the following conclusions concerning the '271 patent. First, the '271 patent generally discloses a method and system:

> for providing feedback [that] includes receiving data indicative of a physical characteristic of a first subject and a physical characteristic of a second subject; determining an evaluation of the data [or course of action]; and providing a notification regarding the evaluation [or course of action] to a device"

(*See e.g.*, Dkt. No. 147, Ex. A, '271 patent col. 2:11-28). The disclosed method reflects three fundamental actions: (1) receiving information regarding physical characteristic(s) of subjects; (2) evaluating, or determining a course of action based on, the characteristic(s); and (3) providing a notification of the evaluation/course of action. (*See* Dkt. No. 147, Ex. A, Figs. 1 and 2).

Second, the '271 patent broadly defines the terms used to describe and to claim the disclosed method via examples. With respect to "physical characteristic," the '271 patent gives examples, stating that it "might be or include the subject's heart rate, blood pressure, blood sugar level, posture, temperature, respiration rate, facial response or position, weight, height, galvanic skin response, pheromone emission, brain wave pattern or rhythm, odor, motion, etc., or a change in any one or more of them." (*See e.g.* Dkt. No. 147, Ex. A, '271 patent Abstract; col. 1:57-64; col. 4:22-23, 53-58).

Third, the '271 patent gives examples of the "determining an evaluation" such that it "may be or include summarizing, tabulating, charting, collecting, aggregating, averaging, comparing, correlating, etc. some or all of the raw physical characteristic data received." (*See e.g.*, Dkt. No. 147, Ex. A, col. 6:56-66).

Fourth, with respect to "determining a course of action," the '271 patent shows that the course of action can be either of an actor such as a teacher or entertainer, or of a subject such as a student or an audience member. (*See e.g.*, Dkt. No. 147, Ex. A, col. 7:27-30; col. 8:14-23, 26-29, 51-55, and col. 9:13-17). The '271 patent gives examples of a person reading stories or giving a lecture. In those examples, the person is provided with feedback on the stories or on the parts of the lecture that the audience liked best, or on what story ending they might prefer. *Id.* Another example provided by the '271 patent is a course of action to get subjects to do something, or to improve the chances of the subjects actually doing something. *Id.* In the Background of the Invention, the '271 patent provides examples of situations where it might be "desirable to have information regarding how a subject or a group of subjects feels about information being delivered or presented to them or how the subjects react while information is being delivered or

3

presented to them." (Dkt. No. 147, Ex. A, col. 1:17-21). For example, the "Background of the Invention, states:

> [A] teacher may wish to know if the students in her class understand the material the teacher is discussing. A lecturer may wish to know what portions of his lecture the audience members find most interesting. Alternatively, the lecturer may want to have a better idea of when to take a break. An entertainer may wish to know what ending to provide to a story or song medley being presented to an audience.

(Dkt. No. 147, Ex. A, col. 1:22-29).

The '271 patent gives another example in the context of a person giving a presentation:

> [A]ssume a speaker is giving a presentation to an audience of ten people and that the speaker may want to direct the presentation along one of several potential themes depending on the interest of the audience. In the method of the present invention, information regarding each of the audience member's heart rates, posture, etc. may be obtained and used to help determine which of the themes the audience members are the most interested in. Once the information is communicated to the speaker, the speaker can direct the presentation appropriately.

(Dkt. No. 147, Ex. A, col. 4:2-11).

The speaker receives feedback information regarding the audience, such as posture (e.g., they are slumping in their seats) or facial response (e.g., they are yawning); the speaker can then make a decision based upon the information. For example, it might be time for the speaker to take a break, speak up, or move to a more rousing topic.

Fifth, the '271 patent gives examples of a "notification" such that it "may be or include an email message, instant message communication, electronic signal or other communication (e.g., radio or wireless transmission, FTP, HTTP or HTML transmission, XML feed), an audible sound, a visual display, a voice message, etc." (*See e.g.*, Dkt. No. 147, Ex. A, col. 7:11-16). The notification can be any format. (*See e.g.*, Dkt. No. 147, Ex. A, col. 8:37-45).

Sixth, the '271 patent discloses that no unique or specific hardware or software is needed to implement the disclosed method, stating, for example, that "embodiments of the present invention are not limited to any specific combination of hardware and software." (*See e.g.*, Dkt. No. 147, Ex. A, col. 12:25-27). Indeed, the '271 patent discloses that implementation of the disclosed method could be:

4

> implemented in many different ways using a wide range of programming techniques as well as general-purpose hardware or dedicated controllers. In addition, many, if not all, of the steps for the methods described above are optional or can be combined or performed in one or more alternative orders or sequences.

(Dkt. No. 147, Ex. A, col. 14:22-28). Thus, implementation of the disclosed method can be via conventional technology used conventionally.

### B. The Asserted Claims

In accordance with LR 2.3, the asserted claims are: 15, 42, 49, 51, 54, 80, 81, 82, 90, and 91 ("Asserted Claims").[1] (Dkt. No. 167-2, p. 3). During reexamination of the '271 patent, independent claim 1 was cancelled. (Dkt. No. 147-1, Ex. 1, p. 22 of 26). All of the Asserted Claims depend directly or indirectly from claim 1, which reads:

> A method for providing feedback, comprising:
>
> > receiving first data indicative of a physical characteristic of a first subject from a first device associated with said first subject and second data indicative of a physical characteristic of a second subject from a second device associated with said second subject;
> >
> > determining an evaluation of said first data and said second data, wherein said evaluation is representative of a state of both said first subject and said second subject; and
> >
> > providing a notification regarding said evaluation to a device.

Because all of the Asserted Claims depend directly or indirectly from claim 1, they each include the subject matter of claim 1. 35 U.S.C. § 112 (fourth paragraph).[2] The following table summarizes the subject matter added to claim 1 by the Asserted Claims.

---

[1] ICON contends that it also alleges infringement of claims 46, 60, 61, 84, 85, 92, 94, and 95. *See* Dkt. No. 166, p. 1, n.3. The court finds that whether these additional claims are considered or not, the result of the court's analysis, as outlined herein, is the same.

[2] The '271 patent was filed May 17, 2001. (Dkt. No. No. 147, Ex. A, face page). This is prior to the September 16, 2012 effective date of the Leahy-Smith America Invents Act ("AIA"). Thus, reference herein is to the pre-AIA version of 35 U.S.C. § 112. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 n. 1 (Fed. Cir. 2015).

| Dependent Claim | Added Subject Matter |
|---|---|
| Claim 15 (depends from claim 14, which depends from claim 13, which depends from claim 1) | This claim adds receiving a notification regarding a plurality of options, and selecting the device to which the notification is sent based on selecting one of the plurality of options. |
| Claims 42, 80, and 90 (each depends from claim 1) | These claims add that the first device of claim 1 is a sensor that senses a physical characteristic of a subject; a remote server receives the first data from the first sensor through the internet; and the remote server determines which of multiple options to provide to the first subject based on first data and second data. |
| Claims 49 (depends from claim 42), 81 (depends from claim 80), and 91 (depends from claim 90) | These claims add that the device is a software application operating on a portable computer/cell phone that has a touchscreen input device. |
| Claims 51 (depends from claim 42) and 82 (depends from claim 80) | These claims add that the first device of claim 1 is a portable wireless sensor configured to wirelessly connect to a cell phone through a wireless connection; they also add that the remote server receives the first data from the first sensor through the internet through the wireless connection between the first sensor and cell phone through a wireless cellular connection of the cell phone to the internet. |
| Claim 54 (depends from claim 51) | This claim adds that the first portable wireless sensor of claim 51 is a heart rate sensor. |

(Dkt. No. 147, pg. 5).

It is apparent from the above summary as well as from the full text of the Asserted Claims that each Asserted Claim articulates the claimed method slightly differently, but claim 1 exemplifies the general concept claimed by the Asserted Claims. It is further apparent that the general concept claimed by the Asserted Claims is providing and using feedback based upon data gathered from subjects, which amounts to (1) observing physical characteristic(s) of subjects; (2) evaluating the characteristic(s); and (3) providing a notification of the evaluation. (*See also* Dkt. No. 147, Ex. A, Fig. 1).

### III. Legal Standards

#### A. Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial." To decide a motion for judgment on the pleadings, the Court accepts as true the non-movant's well-pleaded factual allegations and all reasonable inferences are indulged in favor of the non-movant. *Shaw v. Valdex*, 819 F.2d 965, 968 (10th Cir. 1987). Furthermore, the movant must clearly establish that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

Whether a claim recites patent-ineligible subject matter is a question of law. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd* 561 U.S. 593 (2010) ("[w]hether a claim is drawn to patent-eligible subject matter under §101 is an issue of law[.]"). This determination is a threshold inquiry that is properly decided on the pleadings. *See Ultramercial*, 772 F.3d 709, 717 (Fed. Cir. 2014). The Federal Circuit and district courts have made clear that Section 101 patent eligibility may be, and regularly is, decided at the pleadings stage, without claim construction. *See, e.g., Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (explaining the Federal Circuit "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101"); *see also Epic Tech*, 2015 WL 8160884 at *5 (D. Utah 2015). Deciding the patent eligibility of the Asserted Claims is appropriate now.

#### B. Patent-Eligible Subject Matter

Pursuant to 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." There are three exceptions to Section 101's broad patent-eligibility principles: laws of nature, physical phenomena, and abstract ideas. *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

The Supreme Court most recently addressed determining whether a claim recites patent-eligible subject matter in *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S. Ct. 2347, 2355 (2014). In *Alice*, the Supreme Court reaffirmed the two-step process to determine whether a claim recites patent-eligible subject matter set out in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012)). The first step is to determine whether the claims at issue are directed to patent-ineligible concepts, such as laws of nature, natural phenomena, or abstract ideas. *Id.* If the claims recite, for example, an abstract idea, the Court proceeds with second step to determine if there are additional claim elements that introduce an inventive concept to the claim that is sufficient to transform the abstract idea into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2355.

### C. The presumption of Validity and the Standard of Proof

It is unsettled whether the presumption of validity provided by 35 U.S.C. § 282, along with the associated clear and convincing standard of proof, applies to a Section 101 challenge. For example, Judge Mayer's concurrence in *Ultramercial* concluded that the presumption of validity does not apply in Section 101 inquiries. 772 F.3d at 717 ("[N]o presumption of eligibility attends the section 101 inquiry."). In a nonprecedential opinion, a different panel of the Federal Circuit noted that "[w]e are not persuaded that the district court was correct that a presumption of validity does not apply." *Tranxition, Inc. v. Lenovo (United States) Inc.*, No. 2015-1907, 2016 WL 6775967, at *4 n.1 (Fed. Cir. Nov. 16, 2016). The U.S. Supreme Court has decided Section 101 cases, such as *Alice* and *Mayo*, but it has not discussed or applied a presumption of validity in its analysis. *See Ultramercial* 772 F.3d at 720-21 ("Although the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility.").[3]

---

[3] The Court notes that a presumption of validity as to a Section 101 inquiry would not apply to the reexamination of the '271 patent because such an inquiry may not be raised in a reexamination. *See In re NTP, Inc.*, 654 F.3d 1268, 1275-76 (Fed. Cir. 2011) (citing 37 C.F.R. § 1.552) ("[Q]ualification as patentable subject matter under § 101 . . . ***may not be raised*** in reexamination proceedings.") (emphasis added). Thus, a presumption of validity, if any exists,

In the present case, the Court's decision does not depend upon a presumption of validity, and the Court would reach its conclusion concerning whether the '271 patent Asserted Claims are directed to patent-ineligible subject matter regardless of the applicability of the presumption. In addition, the content of the '271 patent is fixed and not disputable, regardless of whether a clear and convincing standard of proof, or a lesser standard is applied. Consequently, the Court need not choose between the varying Federal Circuit views on the applicability of the presumption of validity or its corresponding clear and convincing standard of proof to a Section 101 analysis.

### 1. *Alice* Step One: Are the claims directed to a patent-ineligible abstract idea?

The Supreme Court has confirmed that abstract ideas, such as ordinary human activities, are ineligible under Section 101 as being directed to unpatentable subject matter.[4] In *Alice*, the Supreme Court held that computerization of the ordinary human activity of maintaining escrow accounts is not patentable subject matter. 134 S. Ct. 2347. In *Bilski v. Kappos*, the Supreme Court held that the ordinary activity of hedging losses is not patentable. 130 S. Ct. 3218, 3229-30 (2010). And in *Mayo*, the Supreme Court held that the ordinary human activity of observing correlations is not patentable. 132 S. Ct. at 1293-94.

Following the Supreme Court's guidance, the Federal Circuit has confirmed that ordinary human activity, such as collecting and utilizing data by conventional means is not patentable subject matter. For example, in *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, the Federal Circuit invalidated claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" because they merely recited an abstract idea. 776 F.3d 1343, 1347 (Fed. Cir. 2014). In holding the claims invalid, the Federal Circuit recognized that the "concept of data collection,

---

would only apply as a result of the U.S. Patent and Trademark Office's original examination and issuance of the '271 patent, not as a result of a reexamination.

[4] As noted above, if the step one analysis results in a conclusion that the claims are directed to an abstract idea, then the claims are patent ineligible unless the step two analysis shows that the claims add an inventive concept to the abstract idea as further discussed in the next section.

recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* The Federal Circuit recently reinforced point in *Electric Power Group, LLC v. Alstom S.A.*, stating that "we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (collecting cases).

Abstract ideas are not limited to natural human activities or financial/business methods and systems. The Federal Circuit has also invalidated patent claims directed to the following abstract ideas: (1) a method and system for managing an electric power grid; (2) a method of managing a bingo game; (3) a method and system of tracking and documenting shipping containers; (4) a method of tracking financial transactions to determine whether they exceed a spending limit (i.e., budgeting); and (5) a method of price optimization.[5] These are just a handful of examples of patent-ineligible subject matter, but they have a commonality: abstract ideas such as natural human activity are not patent-eligible.

### 2. *Alice* Step Two: Do the claims recite additional elements sufficient to transform them into patent-eligible subject matter?

If a claim involves an abstract idea, the court next "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. The court looks at the elements both individually and as an ordered combination. *Id.* at 2355. In other words, if a claim recites an abstract idea, it "must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.*

It is settled that reciting generic or conventional components used in their conventional intended way does not transform an ordinary human activity into patentable subject matter.

---

[5] *See respectively,* (1) *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016); (2) *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014); (3) *Wireless Media Innovations LLC* 100 F.Supp.3d at 415-415; (4) *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); and (5) *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir.), cert. denied, 136 S. Ct. 701, 193 L. Ed. 2d 522 (2015).

*Alice*, 134 S. Ct. at 2359 (adding "well-understood, routine, conventional activit[ies]" previously known to the industry does not constitute § 101 patent-eligible material). The Supreme Court in *Alice* held that elements, such as a computer, add nothing to a claim beyond their well-known functions, do not transform an abstract idea into patent-eligible subject matter. *Id.* at 2359-60 (using a computer to obtain data, adjust account balances based on the data, and issue automated instructions is well-known and does not transform an abstract idea into a patentable-eligible invention). The *Alice* Court explained that using a computer to complete the "well-understood, routine, conventional activit[ies]" previously known to the industry does not constitute § 101 patent-eligible material. *Id.* at 2359; *see also Wireless Media Innovations LLC v. Maher Terminals, LLC*, 100 F.Supp.3d 405, 415-415, *aff'd* 2016 WL 463218 (Fed. Cir. 2016) (physical components such as vehicles, optical scanners, and computers do not transform an abstract idea into patentable subject matter).

**IV.     Analysis and Discussion**

Polar argues that on their face, the Asserted Claims recite the abstract idea of providing and using feedback based on data gathered from subjects. Initially, the Court notes that humans have received and assessed information and thereafter provided feedback to one or more people from time immemorial. The aggregation of information and the use of information to provide advice to people is a practice that has long existed. Today, the process of aggregating information and providing advice is much quicker than in the past due to, for example, the use of computers in the process. Likewise electronic sensors enable various information to be gathered comprehensively and quickly. Sensors have existed in refrigerators, in heaters and furnaces, and temperature controls for a long time. Information gathering from particular sources through the use of sensors, absent uniqueness of a sensor, does not change the nature of the information gathering. As noted above, the '271 patent does not disclose any unique sensor or require any special hardware or programming.

A.   *Alice* Step One

Polar points to claim 1 as the starting point of its argument because all Asserted Claims depend directly or indirectly from claim 1. Polar contends that the abstract idea recited by the Asserted Claims includes three common and ordinary activities: (1) receiving data indicative of physical characteristics of two subjects; (2) evaluating the data, which can be as simple as collecting the received data; and (3) providing a notification regarding the evaluation, which can be as simple as displaying the received data. (Dkt. No. 147, pgs. 14-15 of 21).

Polar compares the Asserted Claims to claims found invalid by the Federal Circuit. For instance, in *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, the Federal Circuit invalidated claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" because they recited an abstract idea. 776 F.3d 1343, 1347 (Fed. Cir. 2014). In holding the claims invalid, the Federal Circuit recognized that the "concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.*

Polar also compares the Asserted Claims to the claims that the Federal Circuit recently held patent ineligible in *Electric Power Group*. There, the Federal Circuit analyzed the patent eligibility of three patents that claimed systems and methods for "performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results" to determine power grid vulnerability. *Electric Power Group,* 830 F.3d at 1351-52. The Federal Circuit observed that it has "treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." *Electric Power Group*, 830 F.3d at 1353 (internal citations omitted). The Federal Circuit concluded that the idea of collecting and analyzing information or data, even when particularly limited, to be an abstract idea. *Electric Power Group,* 830 F.3d at 1353-54 (collecting cases) (Dkt. No. 171, pgs. 9-10 of 16).

Icon takes issue with Polar's description of the Asserted Claims, arguing that the Asserted Claims are like those at issue in *Enfish, LLC v. Microsoft Corp.*, 822 F3d 1350 (Fed.

12

Cir. 2016) and are therefore directed to patent-eligible subject matter. Icon presented arguments directed to only two of the Asserted Claims, claims 15 and 80. Those arguments were directed to distinguishing claims 15 and 80 from the asserted claims in *Content Extraction*. First, Icon argued that claim 15 does not merely recite "collecting data," but "separate devices (e.g., sensors) sense, measure, and create objective data concerning physical characteristics (e.g., brain waves) and then transmit the sensed characteristics in the form of data from each person," and that claim 15 "evaluates a combination of the collected data and provides a notification of that *evaluation* (not of the collected data), receives notification of options, selects an option and selects a device based on the option selection." (*See* Dkt. No. 166, pg. 21-22 of 31) (emphasis in original). Icon asserted that these claim limitations do not have "any counterpart in the *Content Extraction* claim." *Id.* Icon also argued that asserted claim 80 "introduces a key inventive component in the last clause: determining which option(s) 'to provide to the first subject.'" *Id.* Icon argues that in *Content Extraction* the subjects are hard copy documents, and thus, *Content Extraction* is inapplicable to the present case. (*Id.* at pg. 23 of 31). While Icon's arguments pointed out that limitations of claims 15 and 80 were not identical to the *Content Extraction* claim, Icon did not argue or explain why such limitations rendered claims 15 and 80 patent eligible. Icon did not present separate arguments regarding any of the other Asserted Claims, and accordingly, the Court need not address those claims.

The Court agrees with Polar and finds that the Asserted Claims are directed to the abstract idea of providing and using feedback based upon data gathered from subjects. Controlling precedent establishes that the idea of collecting and analyzing information or data, even when particularly limited, is an abstract idea under Section 101. *See Electric Power Group,* 830 F.3d at 1353-54 (collecting cases). The abstract idea claimed by the Asserted Claims recites three ordinary activities: (1) receiving data indicative of physical characteristics of two subjects; (2) evaluating the data, which can be as simple as collecting the received data; and (3) providing a notification regarding the evaluation, which can be as simple as displaying the received data.

(*See* '271 patent, col. 6:56-60; 7:31-35). The Asserted Claims fall directly into the abstract idea category of collecting and analyzing information or data.

While it is true, as Icon notes, that the Asserted Claims recite "providing a notification" and utilizing "a sensor," the Federal Circuit has ruled that claims reciting common hardware to perform functions a human could not, such as a scanner to collect data, do not thereby negate the abstract nature of the claim. As the Federal Circuit held in *Content Extraction*, added limitations must "involve more than performance of well-understood, routine [and] conventional activities previously known in the industry." 776 F.3d at 1347-48. Icon's argument that sensors make the Asserted Claims not abstract is unpersuasive. The '271 patent does not disclose and Icon does not argue that the sensors are of a unique and new structure. Instead, they are disclosed as simply conventional sensors being used conventionally, which is insufficient to transform the abstract idea into patent-eligible subject matter.[6]

Icon's argues that the recitation of an evaluation and a notification render the Asserted Claims not abstract. The '271 patent, however, does not disclose such actions as being unique or novel. Instead, it discloses that these are common actions where an evaluation can be as simple as summarizing, tabulating, charting, or collecting information; (*See e.g.*, Dkt. No. 147, Ex. A, col. 6:56 – col. 7:3) and a notification according to the '271 patent can be as simple as an audible sound. (*See e.g.*, Dkt. No. 147, Ex. A, col. 7:11-16).

Icon points to *Enfish* to argue that the Asserted Claims are patent eligible. Unlike the claims here, the *Enfish* claims were not abstract because they were "directed to a specific improvement to the way computers operate." *Enfish*, 822 F.3d at 1336. But, Icon did not argue that the '271 patent teaches an improvement in how a computer functions, or any new sensor

---

[6] The Court recognizes that *Alice's* first step looks at "the focus of the claims, their character as a whole." *Electric Power*, 830 F.3d at 1353. In the second step, the Court determines whether additional limitations represent a patent-eligible application of the abstract idea. *Id.* Icon, however, distinguishes *Content Extraction* in response to Polar's step one analysis on such a basis. Thus, the Court addresses certain of Icon's step two arguments in its discussion of *Alice's* step one.

structure. Instead, Icon discussed the claims as using conventional sensors to collect objective data and a conventional computer to evaluate data, send notifications, and make determinations. (*See e.g.*, Dkt. No. 166, p. 11 of 31:1-3 and ¶¶ 2 and 3). These are the ordinary functions of sensors and a computer. Because the '271 patent claims are not directed to an improvement in how sensors sense or operate, or an improvement in how computers compute, the Asserted Claims are unlike those in *Enfish*. *See Electric Power Group*, 830 F.3d at 1354.

For the foregoing reasons, the Court concludes that the Asserted Claims are directed to an abstract idea.

### B. *Alice* Step Two

At step two of the *Alice* analysis, Polar argues that the Asserted Claims do not recite any inventive concepts to transform the claimed abstract idea into patent-eligible subject matter. (*See, e.g.,* Dkt. No. 147, pgs. 16-17 of 21). To qualify as patent-eligible subject matter, a claim must recite "significantly more" than the abstract idea, for example by "improv[ing] an existing technological process," and not merely by "implement[ing] [the idea] on a computer." *Alice*, 134 S. Ct. at 2358. Polar argues that the Asserted Claims do not improve an existing technological process or product and merely recite using conventional devices for their conventional purpose – e.g., sensors for sensing and displays for displaying. (Dkt. No. 147, pgs. 16-17 of 21).

Icon argues that the Asserted Claims recite an inventive concept and provides several different bases for its argument. First, Icon argues that "[a]s an ordered combination, the additional elements do introduce inventive concepts." (Dkt. No. 166, pgs. 27-28 of 31). Icon contends that "by putting a sensor that collects 'data indicative of a physical characteristic' in communication with a remote, internet-accessible server that also receives similar data about one or more other subjects, the claims at issue enable the combined evaluation of more than one subject's objective physical-characteristics data, resulting in the provision of one or more options." (Dkt. No. 166, pgs. 27-28 of 31). Second, Icon relies upon *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2016) and *Bascom Global Internet Services, Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) in support of its argument that

15

the Asserted Claims, even if directed to an abstract idea, contain inventive concepts to transform the claims into patentable subject matter. Third, at the January 19, 2017 hearing, Icon argued that the Asserted Claims teach a "unique distributed architecture" of databases and, for this reason, the Asserted Claims contain an inventive concept. (*See* Hearing Tr., 27:23-31:2, Jan 19, 2017). Fourth, Icon argued that certain arguments in Polar's own patent applications, which are unrelated to the Asserted Claims, estop Polar from making its step two arguments. (Dkt. No. 166, pgs. 25-27). Fifth, Icon argued that the reexamination of the '271 patent demonstrated that it was an improvement over existing technology. (Dkt. No. 166, pgs. 28-29 of 31).

The Court does not find Icon's arguments persuasive. It finds no inventive concept in the ordered combination of the claim limitations. The Asserted Claims are quite similar to those asserted in *Electric Power Group*, where the Federal Circuit reasoned that "limiting the claims [directed to collecting data, analyzing the data, and displaying the results] to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." 830 F.3d at 1354. Furthermore, "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas." *Id.* at 1355. Here, the '271 patent does not disclose and the Asserted Claims do not "require[] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information" and, therefore, do not include an "inventive concept of the application." *Id.*

For the same reason, Icon's argument related to a unique architecture of databases is unavailing. As noted above, the '271 patent discloses that no unique or specific hardware or software is needed to implement the disclosed method, stating, for example, that "embodiments of the present invention are not limited to any specific combination of hardware and software." (*See e.g.*, Dkt. No. 147, Ex. A, col. 12:25-27). More particularly, the '271 patent discloses that implementation of the disclosed method could be:

16

> implemented in many different ways using a wide range of programming techniques as well as general-purpose hardware or dedicated controllers. In addition, many, if not all, of the steps for the methods described above are optional or can be combined or performed in one or more alternative orders or sequences.

(Dkt. No. 147, Ex. A, col. 14:22-28). Thus the abstract idea underlying the '271 patent can be implemented via conventional technology used conventionally. Once again, there is no inventive concept in such an application of conventional technology.

Icon cited a Declaration of Dr. David Brienza in support of its argument that the Asserted Claims include an inventive concept. But, on a motion for judgment on the pleadings, the court considers only the Complaint, the Answer, and the documents attached as exhibits to either. *See Burkett v. Convergys Corp.*, 2:14-CV-376-EJF, 2015 WL 4487706 at *9 (D. Utah, July 23, 2015). The declaration meets none of these criteria. Additionally, whether the Asserted Claims are directed to patent-eligible subject matter is a question of law, and Dr. Brienza's legal conclusions invade the province of the Court. *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013); s*ee also Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 98745 at *3 (E.D. Tex. Jan. 8, 2016) (striking an expert's opinion on subject matter eligibility because it did nothing more than analyze the law and offer legal conclusions).

Furthermore, even if the Court were to consider the declaration, it does not alter the analysis. The Supreme Court has held that "[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of <u>no relevance</u> in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 189 (1981) (emphasis added).

Icon's reliance upon *DDR Holdings* and *Bascom* is also unpersuasive. Icon argues that the '271 patent improved existing technology, specifically making "share and compare" possible. (Dkt. No. 166, pg. 28 of 31). But, sharing and comparing information has long been possible. Icon does not argue or explain why this Court should consider sharing and comparing information either new or inventive. The Federal Circuit in *DDR Holdings* found a computer-

implemented method of manipulating computer interactions to be patent-eligible because the "claimed solution amounts to an inventive concept for resolving" the Internet-centric problem of making two web pages look the same. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d at 1258. The claims here do not provide any inventive functionality in employing generic components such as sensors and touchscreens. As in *Electric Power Group*, the Asserted Claims "specify what information . . . to gather, analyze, and display . . . by use of [nothing] but entirely conventional, generic technology." 830 F.3d at 1356 (analyzing the claims-at-issue against *DDR Holdings*). The Asserted Claims do not solve or claim to solve any internet or tech-centric problem.

*Bascom* is inapposite here for the same reason. In *Bascom*, the Federal Circuit found that the patent-at-issue claimed "a technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way) to filter content on the Internet that overcomes existing problems with other Internet filtering systems . . . the claimed invention represents a software-based invention that improves the performance of the computer system itself." *Bascom Global Internet Services*, 827 F.3d at 1351. None of the Asserted Claims relate to or propose a technology-based solution to sensors, the Internet, or a computer.

Icon's argues that Polar should be estopped from arguing patent-ineligibility in this case because of arguments it made in patent applications that are entirely unrelated to the '271 patent. The Court sees no basis for estopping Polar.

Finally, Icon's argument based on the reexamination of the '271 patent is legally irrelevant. The question of patent-eligible subject matter cannot be raised in a reexamination. *See In re NTP, Inc.*, 654 F.3d 1268, 1275-76 (Fed. Cir. 2011) (citing 37 C.F.R. § 1.552) ("[Q]ualification as patentable subject matter under § 101 . . . may not be raised in reexamination proceedings."). Since this issue cannot be raised in a reexamination proceeding, the USPTO's decision has no bearing on subject matter eligibility. *Id.*; *see also SmartGene, Inc. v. Advanced Biological Labs., SA*, 852 F.Supp.2d 42, 50 (D.D.C. 2012), *aff'd*, 555 F.App'x 950 (Fed. Cir. 2014).

For the foregoing reasons, the Court concludes that the Asserted Claims are directed to an abstract idea and do not include an inventive concept that would render them patent-eligible.

## V. Conclusion

Because the Asserted Claims are directed to patent-ineligible subject matter, Polar's Motion for Judgment on the Pleadings is granted.

Let judgment be entered accordingly.

DATED this 10th day of March, 2017.

Bruce S. Jenkins
United States Senior District Judge